**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DAVID ADALBERTO GUERRA-ORTIZ,

Petitioner

v.

TODD BLANCHE, et al.,

Respondents

Case No.: 2:26-cv-02157-APG-DJA

**Order Granting First Amended Petition for Writ of Habeas Corpus**

[ECF No. 9]

David Adalberto Guerra-Ortiz is a citizen of Guatemala who is currently being detained by Immigration and Customs Enforcement (ICE). In February 2022, he was admitted as a legal permanent resident. ECF No. 9-1 at 3.

Guerra-Ortiz has an extensive criminal history. He has been convicted of unlawful sexual activity with a minor; driving under the influence; driving with a suspended, revoked, or disqualified license; stalking; assault; domestic violence in the presence of a child; and failure to register as a sex offender, among other crimes. *Id.* at 3–4. Relevantly, Guerra-Ortiz was also convicted of possession or use of a controlled substance in two separate instances. ECF Nos. 9-1 at 3–4; 13-2 at 2; 13-3 at 2.

In March 2026, Guerra-Ortiz was arrested in Utah for failure to register as a sex offender. ECF No. 9-1 at 3. ICE took Guerra-Ortiz into its custody that same month. *See* ECF No. 9-6 at 2. ICE served him with a Warrant for Arrest of Alien and a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(B)(i). ECF Nos. 9-5 at 2; 13-5 at 5. ICE determined Guerra-Ortiz was removable, as relevant here, because he has a conviction relating to a controlled substance (i.e., methamphetamine), and he was subject to mandatory detention under § 1226(c)(1)(B). ECF Nos. 9-6 at 1; 13-5 at 2, 5. He has remained in ICE custody since then.

In July 2026, an immigration judge (IJ) ordered Guerra-Ortiz's removal. ECF No. 13-6 at 6–7. That month, he appealed to the Board of Immigration Appeals (BIA) and filed a petition for a writ of habeas corpus. ECF Nos. 1; 13-7 at 2, 4. The BIA has not yet adjudicated his appeal. ECF Nos. 9 at 6; 13 at 2.

Guerra-Ortiz argues that his "prolonged detention with no bond hearing violates his right to due process under the Fifth Amendment" under the three-factor balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and requests that I either order his release or order the Department of Homeland Security to provide him with a bond hearing. ECF No. 9 at 3, 9. The government responds that Guerra-Ortiz "does not dispute the drug related conviction, does not dispute that it places him within § 1226(c), and does not contend that the government has delayed his proceedings," so his only claim is that "after roughly six months in custody" he is entitled to a bond hearing under the Fifth Amendment. ECF No. 13 at 2. The government argues that *Demore v. Kim*, 538 U.S. 510 (2003), forecloses such a claim. The government also argues that *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "confirmed that § 1226(c) contains no implicit time limit" for detention without a bond hearing. *Id.* Finally, the government argues Guerra-Ortiz cannot prevail even under *Mathews*.

The government fails to identify any authority concluding that *Demore* and *Jennings* foreclose a noncitizen's as-applied challenge to his prolonged detention without a bond hearing under § 1226(c). I therefore apply *Mathews* to assess whether Guerra-Ortiz has received adequate process and determine that the scale balances in his favor. I grant his petition as to his request for a bond hearing, at which the government must prove by clear and convincing evidence that Guerra-Ortiz is a danger to the public or a flight risk, but I decline to order his release at this time.

# I. ANALYSIS

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). And the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, my habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). I possess "equitable discretion . . . . as law and justice require" for remedying unlawful detention when resolving habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (quotation omitted).

## A. *Demore* and *Jennings* do not foreclose application of *Mathews* here.

*Demore* does not address the precise issue presented here. Guerra-Ortiz challenges his prolonged detention under § 1226(c) without a bond hearing. He reasons that he is now entitled to an individualized custody determination due to the extended length of his confinement and the uncertainty surrounding when the BIA will address his appeal. Unlike the noncitizen in *Demore*, Guerra-Ortiz is not "challenging the constitutionality of § 1226(c) itself." 538 U.S. at 514. Contrary to the government's argument that Guerra-Ortiz presents the same challenge the noncitizen raised in *Demore*, Guerra-Ortiz brings a due process challenge to § 1226(c) as applied to his circumstances. ECF No. 13 n.2.

In *Demore*, the Supreme Court rejected the noncitizen's categorical argument "that the [g]overnment may not, consistent with the Due Process Clause of the Fifth Amendment, detain him for the brief period necessary for his removal proceedings" without offering a bond hearing because the government "had made no determination that he posed either a danger to society or a flight risk." 538 U.S. at 514, 523. The Court explained that "'Congress regularly makes rules'" applicable to noncitizens "'that would be unacceptable if applied to citizens.'" *Id.* at 521 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)); *see also id.* at 522. The Court further reasoned that the circumstances in *Demore* were materially distinguishable from those in *Zadvydas*. First the Court explained that unlike the noncitizen in *Demore*, in *Zadvydas* the "final orders of deportation were ones for whom removal was no longer practically attainable" because those noncitizens lacked a home country to which they could be removed. *Id.* at 527 (quotation omitted). Second, the Court explained that "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days [ ] considered presumptively valid in *Zadvydas*." *Id.* at 529. The Court therefore concluded that this categorical constitutional challenge to § 1226(c) mandatory detention without a bond hearing failed. *Id.* at 530–31.

The argument Guerra-Ortiz presents, however, is not a categorical due process challenge to prolonged detainment under § 1226(c). Guerra-Ortiz contends that his detainment under § 1226(c) without a bond hearing violates due process because of his unique circumstances. First, he argues that he has been detained over six months without a bond hearing, a period the Ninth Circuit has characterized as prolonged. Second, he argues that the BIA has a substantial backlog of appeals so he could be detained for an indefinite period, lasting not just months but

years. This is a materially distinct challenge from the noncitizen in *Demore*, who argued for a categorical right to a bond hearing after about six months for all similarly situated individuals.

Similarly, *Jennings* does not address this precise issue. There, the Court analyzed the "proper interpretation of . . . [§]1226(c)" and limited its holding to a determination that the statutory text "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." 583 U.S. at 289, 305–06. The Court ruled that periodic bond hearings are not required as a matter of statutory interpretation and remanded the constitutional due process issue. *Id.* at 313. On remand, the Ninth Circuit remarked that it has "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). But the court did not reach this constitutional question, instead remanding the matter to the district court. *Id.* at 257.

I find instructive several authorities that, when read collectively, suggest that the best reading of the Supreme Court's holdings in *Demore* and *Jennings* is one that permits me to assess whether Guerra-Ortiz's continued detention violates due process as applied to him under *Mathews*. The Supreme Court recognized in *Zadvydas* that at some point "an alien's liberty interest is . . . strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." 533 U.S. at 697 (simplified). Here, a similar issue has been presented regarding how long the government may detain Guerra-Ortiz without a bond hearing if the removal process is prolonged

due to a backlog of appeals before the BIA, potentially resulting in him being subject to an indefinite removal date. *See* ECF No. 9 at 12.

In *Demore*, Justice Souter authored a concurrence expressing concern that the majority overlooked a similar issue: whether the government's "undisputed power to detain aliens in order to avoid flight or prevent danger to the community . . . . may be exercised by detaining a still lawful permanent resident alien when there is no reason for it and no way to challenge it." 538 U.S. at 576. Several circuit courts have addressed such concerns. The First, Second, and Third Circuits recognize that *Demore* does not foreclose individualized challenges to the constitutionality of detainment under § 1226(c). The First Circuit explained that while *Demore* "implicitly rejected an across-the-board rule that some hearing must always be held within six months, the opinion would seem to leave open the possibility that in most individual cases, detentions of six months (or of even less time) might necessitate some type of hearing to see if continued detention is reasonably necessary to serve the statute's purposes." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021). The Second Circuit reached a similar conclusion, determining that "*Demore* and *Jennings* leave open the question whether prolonged detention under section 1226(c) without a bond hearing will at some point violate an individual detainee's due process rights." *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) (emphasis omitted), *cert. granted sub nom. Genalo v. Black*, 146 S. Ct. 2733 (2026), *and cert. dismissed sub nom. Genalo v. Black*, No. (R46-21 / OT 2025), 2026 WL 2752021 (U.S. Sept. 16, 2026). And the Third Circuit has similarly opined that "even after *Jennings*, an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020). *But see Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (reading the *Demore* majority to have "opted for a bright-line rule [that]

the government can detain an alien for as long as deportation proceedings are still pending" (simplified)).

The Ninth Circuit has not yet reached this issue, and the government has not relied on any authorities outside of *Demore* and *Jennings* to support its argument that Guerra-Ortiz's petition is foreclosed. I therefore determine that Guerra-Ortiz is entitled to challenge his alleged prolonged detention without a bond hearing under § 1226(c), which is consistent with the conclusions of other federal judges of this district. *See Munoz-Gaspar v. Mattos*, No. 2:26-cv-01031-MMD-BNW, 2026 WL 1878727, at *3 (D. Nev. June 30, 2026); *De Leon v. Mayorkas*, No. 2:23-cv-02073-GMN-VCF, 2024 WL 343437, at *2–3 (D. Nev. Jan. 29, 2024).

I next consider the appropriate framework to apply when analyzing whether Guerra-Ortiz has received adequate process. *Compare Decker*, 103 F.4th at 145 (concluding "the *Mathews* framework applies generally[ ] and will govern in individual cases") *with German Santos*, 965 at 211 (applying a "a nonexhaustive list of four factors" to assess whether a noncitizen's "detention has grown unreasonable"). The petitioner urges me to apply *Mathews*, and the government has not otherwise argued for a different test. I note that the Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that *Mathews* applied to assess a due process challenge under § 1226(a) because it "remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). In doing so, the Ninth Circuit pointed to other circuits' and the Supreme Court's application of *Mathews* to other due process challenges in the immigration context. *Id.* at 1206. Thus, like the First and Second Circuits, I apply *Mathews* to assess whether Guerra-Ortiz has been provided adequate process under § 1226(c).

/ / / /

**B. The *Mathews* factors weigh in favor of the petitioner.**

Under *Mathews*, I assess (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the respondents' "interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

1. <u>The private interest factor weighs slightly in Guerra-Ortiz's favor</u>.

The parties agree that Guerra-Ortiz's liberty interest is at stake but dispute whether the duration of his detainment results in this factor weighing in his favor. Guerra-Ortiz argues that his liberty interest is substantial because he "has been detained for over 6 months and will undoubtedly be detained for a significant additional period of time while his appeal is pending." ECF No. 9 at 10. He also contends that I should consider his custody conditions, which he alleges are "indistinguishable from criminal incarceration." *Id.* The government argues that detainment of about six months is insufficient to demonstrate a substantial private interest. The government points to the Supreme Court's holdings in *Zadvydas* and *Demore*, which characterized six months of detainment as presumptively reasonable in the former and referred to that same period as "brief" in the latter. The government also refers to the Ninth Circuit's decision in *Rodriguez Diaz*, which ultimately determined that a noncitizen who had been detained for 14 months received adequate due process. *See* ECF No. 13 at 11. Additionally, the government contends that "continuation of [Guerra-Ortiz's] detention is the product of his own choices" as he exercised his appeal rights. *Id.*

Persuasive authorities have left unanswered what precise period of confinement should be considered prolonged and thus should tip the first *Mathews* factor in favor of a petitioner. In

*Rodriquez Diaz*, a case analyzing detainment under § 1226(a), the Ninth Circuit acknowledged in dicta that it has "previously referred to detentions longer than six months as 'prolonged' . . . in the context of detentions for which no individualized bond hearings had taken place at all." 53 F.4th at 1207. In *Black*, the Second Circuit similarly opined that "*Demore* and *Zadvydas* imply . . . that any immigration detention exceeding six months without a bond hearing raises serious due process concerns." 103 F.4th at 150. But as the government has pointed out, *Zadvydas* and *Demore* found about six months of detention reasonable. In *Zadvydas*, the Court held that a six-month detention was "presumptively reasonable" for purposes of § 1231(a)(6). 533 U.S. at 700–01. And in *Demore*, the noncitizen had been detained for about six months, which was then "longer than average," yet the Court found his detention constitutional. 538 U.S. at 530.

Given the Supreme Court's analysis in *Demore* and *Zadvydas*, detention at a little over the six-month mark without a bond hearing under § 1226(c) does not necessarily result in the first *Mathews* factor weighing in the petitioner's favor. However, Guerra-Ortiz has been in ICE custody for a little over seven months now, so this factor weighs slightly in his favor.

While the government has not responded to Guerra-Ortiz's argument that I should consider the conditions in which he is held, I do not find this argument persuasive because Guerra-Ortiz does not provide sufficient information about those conditions to guide my analysis. The only burdens he identifies are inherent to detention, would apply in every case, and are already part of the consideration regarding his liberty interest. *See* ECF No. 9 at 11. I also do not find persuasive the government's argument that Guerra-Ortiz is responsible for the delay in his case as delays attributable to a noncitizen's exercise of his right to an appeal are not "'generally considered dilatory conduct.'" *Munoz-Gaspar*, 2026 WL 1878727, at *3 (quoting *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-CV-00039-TL, 2026 WL 764689,

at *5 (W.D. Wash. Mar. 18, 2026)). This first factor, therefore, is not dispositive. I "cannot simply count his months of detention and leave it at that." *Rodriquez Diaz*, 53 F.4th at 1208. But given the length of Guerra-Ortiz's seven-month detention, this factor weighs slightly in his favor.

2. <u>The probative value of a bond hearing and the risk of an erroneous deprivation of his liberty without a hearing weigh in Guerra-Ortiz's favor</u>.

Guerra-Ortiz argues that "his continued detention without a bond hearing is likely to result in the erroneous deprivation of his liberty" because "his removal order will likely stay pending for not months but years." ECF No. 9 at 11–12 (simplified). He argues that "the backlog of cases sitting with the BIA has . . . skyrocketed," increasing "from 34,226 at the end FY 2016 to . . . 219,945" as of January 2026. *Id.* at 12 (citing to *Executive Office for Immigration Review Adjudication Statistics*, U.S. Dep't of Just. (Jan. 26, 2026), https://www.justice.gov/eoir/media/1344986/dl?inline).[1] The government does not dispute this data or the allegation that it could take years for the BIA to adjudicate Guerra-Ortiz's appeal. Rather, the government contends that he has no statutory entitlement to a bond hearing under § 1226(c) and that the probable value of such a hearing under the statute is "nil" due to his extensive criminal record. ECF No. 13 at 12.

The second *Mathews* factor weighs in favor of a bond hearing. Guerra-Ortiz has presented data that the present circumstances are materially different from those weighed by the Supreme Court in *Demore*. In *Demore*, the Court observed that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals

[1] The petitioner does not provide data clarifying the turnaround time for the appeals pending before the BIA in 2026 or recent years.

. . . to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." 538 U.S. at 529 (simplified). Guerra-Ortiz was detained for over three months before he received his removal hearing before the IJ and he has since been detained for over seven months. He therefore has nearly doubled the average detainment period the Supreme Court considered in *Demore*. And, again, the government does not dispute that it could be years before the BIA evaluates his appeal, rather than the four-month average discussed in *Demore*.

Additionally, I consider that Guerra-Ortiz has received no form of individualized custody determination and § 1226(c) does not guarantee him a bond hearing in the future. In *Rodriquez Diaz*, the Ninth Circuit observed that whether a noncitizen had received a previous custody hearing played a role in its prior decisions where it had characterized a noncitizen's detainment as "prolonged." 53 F.4th at 1207. The Ninth Circuit also indicated that I should consider "the further process . . . available to him." *Id.* at 1208. I also consider that the Ninth Circuit has expressed that it has "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." *Rodriquez*, 909 F.3d at 256.

Although the risk of erroneous deprivation in this case may be lower than in other cases due to Guerra-Ortiz's extensive criminal history, the question presented is whether Guerra-Ortiz has a constitutional right to a bond hearing under the Fifth Amendment because of his alleged prolonged detainment without an opportunity to be heard. The government would have an opportunity to present its arguments about his dangerousness and flight risk at the bond hearing before an IJ. Accordingly, the second factor weighs in Guerra-Ortiz's favor.

/ / / /

/ / / /

/ / / /

3. The government's interest does not outweigh the prior two factors for a bond hearing, but it does outweigh Guerra-Ortiz's interest in immediate release.

Finally, the government's interest in denying Guerra-Ortiz a bond hearing does not outweigh the first two factors. Ortiz-Guerra argues that providing him with a bond hearing "would place only a minimal burden on the government" but denial of the same "imposes a substantial burden on" him. ECF No. 9 at 15. He reasons that the cost of a bond hearing is relatively low, and the government's interest in enforcing immigration law would be fulfilled by an IJ engaging in an individualized custody assessment. He further argues that the government's strong interest in protecting the public from dangerous noncitizens is not implicated in this petition. The government responds that it "has a (sic) paramount interest in ensuring that noncitizens removed appear for and submit to removal, and in protecting the public from noncitizens with criminal records while proceedings are pending." ECF No. 13 at 13. The government further argues that it "has a substantial interest in the orderly administration of a nationwide detention system." *Id.* The government's interests do not outweigh the other two factors here to tip the *Mathews* balancing test in its favor so as to foreclose all the petitioner's requested relief.

The government's strong interests in enforcing immigration law, complying with the congressional mandate to detain individuals like Guerra-Ortiz who have certain qualifying convictions, and protecting the public from dangerous criminals outweigh Guerra-Ortiz's interest in immediate release. However, these interests are not undermined by offering the petitioner a bond hearing under the undisputed circumstances that it may take years for the BIA to adjudicate his appeal. The Court in *Demore* relied on the definite end point in the detainment of noncitizens under § 1226(c) when reasoning that the government may "constitutionally detain deportable

aliens during the limited period necessary for their removal proceedings." 538 U.S. at 526–30. In contrast, the present backlog of appeals has created uncertainty about whether Guerra-Ortiz's appeal could be resolved in years rather than months. The Supreme Court also recognized that "detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. If I grant the requested relief of a bond hearing, however, this issue is not necessarily implicated. A bond hearing merely provides the opportunity for the petitioner to present evidence showing that he is not a danger to the public or a flight risk. Detention under § 1226(c) is different because Congress found individualized hearings unnecessary and counterproductive, but "nothing in the history of [the Immigration and Nationality Act statutes] clearly demonstrates a congressional intent to authorize indefinite . . . detention." *Zadvydas*, 533 U.S. at 699.

Under *Mathews*, I also examine "the fiscal and administrative burdens that the additional or substitute procedural requirement" would impose on the government, but the government has raised no such concerns here. *See Mathews*, 424 U.S. at 334–35. I therefore will treat those burdens as being conceded by the government to be insubstantial.[2] Weighing the *Mathews* factors under the facts of this case, due process requires the government to provide Guerra-Ortiz with an individualized bond hearing.

[2] I also find instructive Judge Lipez's dissent in *Reid*, which makes the practical observation that "bond hearings are routine in immigration courts" so offering "bond hearings after six months for § 1226(c) detainees would not require new procedures and, thus, should not unduly increase the burden of administration." *See* 17 F.4th at 20–21. The burden of offering a bond hearing is thus "'easily outweighed by the reduction in the risk of erroneous deprivation of liberty that would result from the additional safeguard[.]'" *Munoz-Gaspar*, 2026 WL 1878727, at *4 (quoting and applying *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017), a case that examined detainment under § 1226(a), in the context of a prolonged detainment of a noncitizen under § 1226(c)).

**C. The government must bear the burden to demonstrate by clear and convincing evidence at the bond hearing that Ortiz-Guerra is a flight risk or danger to the community.**

Ortiz-Guerra argues that having established his entitlement to a bond hearing under *Mathews*, the government must bear the burden of proving by clear and convincing evidence that he is a danger or a flight risk. ECF Nos. 9 at 12 (citing *Romero Estrada v. Mattos*, No. 2:26-cv-00425-ART-NJK, 2026 WL 996929, at *4 (D. Nev. Apr. 13, 2026)); 14 at 7 (citing *Black*, 103 F.4th 133 at 159)). The government responds that the petitioner "should bear the burden of demonstrating that he is neither a flight risk nor a danger to the community, consistent with the ordinary allocation of the burden in immigration bond proceedings, 8 C.F.R. § 1236.1(c)(8); *In Re Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006)." ECF No. 13 at 14. The government further contends that the clear and convincing standard is the product of the Ninth Circuit's now overruled statutory construction. *Id.* (referring to *Singh v Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

I conclude that the government must bear the burden to demonstrate by clear and convincing evidence at the bond hearing that Ortiz-Guerra is a danger to the community or a flight risk. In doing so, I acknowledge that this question is unsettled in the Ninth Circuit, and other circuits' analyses differ.

Although some courts have read the Ninth Circuit's decision in *Martinez v. Clark* to allocate a clear and convincing burden of proof on the government in an initial bond hearing under § 1226(c), I disagree with that reading. *See, e.g., Joudallah v. Warden, Mesa Verde Det. Facility*, No. 1:26-cv-8753-TLN-JDP, 2026 WL 3459326, at *3 (E.D. Cal. Nov. 13, 2026). In *Martinez*, a district court granted a habeas petition and ordered a bond hearing for a noncitizen

detained under § 1226(c) at which the government would bear the burden of showing flight risk or dangerousness by clear and convincing evidence. 124 F.4th 775, 780–81 (9th Cir. 2024). An IJ held the bond hearing and denied the bond, finding the government had met its burden. *Id.* The BIA affirmed that decision. *Id.* at 781. That led the petitioner to file a second habeas petition arguing, among other things, that "the BIA applied an incorrect burden of proof at his hearing" because "the BIA failed to apply the correct clear-and-convincing burden of proof" and also "impermissibly shifted the burden of proof to him." *Id.* at 781, 785. The Ninth Circuit rejected this claim. The court reasoned that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and considered his criminal history and rehabilitation efforts. *Id.* at 785–86. The Ninth Circuit did not squarely address whether the government always bears the burden by clear and convincing evidence at an initial bond hearing for a noncitizen subject to prolonged detention under § 1226(c); rather it observed that the BIA applied that standard properly as ordered by the district court in that case. I thus do not view *Martinez* as dispositive here.

I find instructive the Ninth Circuit's analysis in *Rodriquez Diaz*, particularly given that the government relies on authorities that pertain to § 1226(a). In *Rodriguez Diaz*, the Ninth Circuit explained that "[s]ections 1226(a) and 1226(c) [ ] differ as to the procedural protections afforded once an alien is already detained." 53 F.4th at 1197. The Ninth Circuit ruled that at a second bond hearing under § 1226(a), the burden to prove by clear and convincing evidence whether the noncitizen is a danger or flight risk remains on the noncitizen. *Id.* at 1203. The Ninth Circuit reasoned that § 1226(a) "provide[s] extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the

opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. "By contrast, § 1226(c) on its face offers no opportunity for release on bond." *Id.* at 1197. Thus, there is support for the proposition that the liberty interest of a noncitizen subject to prolonged detainment under § 1226(c) is more substantial than that of a noncitizen detained under § 1226(a) because the noncitizen detained under § 1226(c) has never received the same procedural protections and individualized determination that a person detained under § 1226(a) has.

As a result, the burden of proof should shift to the government to justify the continued deprivation of Guerra-Ortiz's liberty. This approach is consistent with the First and Third Circuits. *Black*, 103 F.4th at 155–58; *German Santos*, 965 F.3d at 213–14.[3] Accordingly, I grant Guerra-Ortiz's petition and order a bond hearing at which the government bears the burden of providing flight risk or danger to the community by clear and convincing evidence.

/ / / /

/ / / /

/ / / /

---

[3] The issues of who bears the burden in a noncitizen's bond hearing and what standard applies raise difficult questions. Courts attempt to draw from different principles under circuit-specific analyses of the applicable statutory subsections to determine what due process requires in each scenario. *See Black v. Almodovar*, 156 F.4th 171, 173 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc) ("[A] disjointed body of case law analyzing § 1226(a) and § 1226(c) has bubbled up through the circuits. . . . [The Second Circuit] has now decided . . . that under both statutes, prolonged detention must trigger a bond hearing in which (i) the government bears the burden, (ii) by clear and convincing evidence. As to § 1226(a), the First Circuit agrees with our Court in part . . . but the Fourth and Ninth Circuits go the other way entirely; they have held that due process allows the burden to remain with the noncitizen. And the Third Circuit has gone with the Fourth and Ninth Circuit with respect to § 1226(a) . . . but with [the Second Circuit] on § 1226(c) . . . . These all-over-the-map holdings present more than the usual circuit split. Put together, they're a circuit splat.") (simplified).

## II. CONCLUSION

I THEREFORE ORDER that petitioner David Adalberto Guerra-Ortiz's amended petition for Writ of Habeas Corpus **(ECF No. 9) is GRANTED** as to the requested relief of a bond hearing.

I FURTHER ORDER that by November 24, 2026, the respondents must provide Guerra-Ortiz with an individualized bond hearing at which the government bears the burden of proving by clear and convincing evidence that Guerra-Ortiz presents a flight risk or danger to the community.

DATED this 16th day of November, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE